**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 06-250-JBC**

**RHODA M. WITHERS,**                                                        **PLAINTIFF,**

**V.**                        **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                        **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

The plaintiff, Rhoda Withers, brought this action pursuant to 42 U.S.C.
§ 405(g) to obtain judicial review of an administrative decision of the
Commissioner.  The court, having reviewed the record and being otherwise
sufficiently advised, will deny the plaintiff's motion for summary judgment (DE 9)
and grant the Commissioner's motion for summary judgment (DE 11).

**I.    Background**

The plaintiff alleges that she became disabled on November 29, 2003, due to
obesity, additional physical problems, all of which are related to her weight,
including degenerative arthritis and chronic pain in her hips, back, and feet, and
knees, depression, and anxiety.  *E.g.*, DE 9-2 at 6-7.  A formal hearing on the
plaintiff's application for Disability Insurance Benefits and Supplemental Security
Income payments was held before an administrative law judge ("ALJ") on January
11, 2006, in Hazard, Kentucky.  The ALJ denied the plaintiff's application on

February 21, 2006, a decision which was upheld by the Appeals Council, and the plaintiff then filed this application for judicial review.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *Id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even if the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

In determining disability, the ALJ conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot

perform her past relevant work, whether significant numbers of other jobs exist in the national economy which she can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**II.     The ALJ's Determination**

At Step 1, the ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (R. at 20.)  At Step 2, the ALJ found that the plaintiff's impairments should be considered "severe" based on the standards set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c), but at Step 3, the ALJ found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* at 21.  At Step 4, the ALJ found that the plaintiff's nonexertional limitations prevent her from performing her past relevant work as a launderer, cook's helper, and kitchen supervisor, and the ALJ further found that the transferability of the plaintiff's job skills is not material to the determination of disability due to her age. *Id.* at 22-23.  At Step 5, the ALJ found that the plaintiff's limitations have impeded her ability to perform "all or substantially all of the requirements" of the full range of light work, as defined by the Guidelines. *Id.* at 23.  Nevertheless, the ALJ also found that the plaintiff was capable of performing a significant number of jobs in the regional, state, and national economy, such as a cashier or a housekeeper. *Id.* at 23.  Therefore, the

3

ALJ concluded that the plaintiff was not under a disability, as defined in the Social Security Act. *Id.* The ALJ also found that the plaintiff's "statements concerning the intensity, duration and limiting effects of [her] symptoms are only partially credible." *Id.* at 22.

III.   **Analysis**

The plaintiff now claims that the ALJ completely failed to mention her morbid obesity in his decision, "which is a material error, and . . . a violation of Social Security Ruling 02-1p . . . warranting reversal and remand." (DE 9-2 at 2.) The plaintiff also argues that her "past work was never accurately described nor assessed" during her hearing, which also constitutes material error "sufficient to warrant reversal and remand." *Id.* at 3. Finally, the plaintiff argues that the ALJ misused the testimony of a vocational expert in response to a hypothetical question, and that as a result of this error, the ALJ's decision was not supported by substantial evidence. *Id.* at 5-6. The court will consider each argument in turn.

A.   **The ALJ's Alleged Failure To Mention the Plaintiff's Obesity**

To support her argument that the ALJ's alleged failure to mention her morbid obesity constituted reversible error, the plaintiff relies, without a full citation or any explanation, upon two cases allegedly from the Northern District of Ohio. The court need not address the legal merits of this argument, however, because the court finds that the plaintiff's descriptive claim about the ALJ's decision is simply incorrect. In his decision, the ALJ specifically noted that "[t]he medical evidence of

4

record . . . reflect[s] conservative care for *morbid obesity*, hypertension,

gastroesophageal reflux disease, anxiety symptoms and various arthralgias

(principally complaints of low back, bilateral knee and hip, and right elbow pain)."[1]

(R. at 21 (emphasis added).)

> **B.    The ALJ's Allegedly Inaccurate Description of the Plaintiff's Past Work**

Before the alleged onset of her disability, the plaintiff worked as a launderer,

cook's helper, and kitchen supervisor.  During the hearing, in describing the

plaintiff's past work history to the vocational expert in his first hypothetical, the

ALJ asked the vocational expert to consider the prospects for a woman of the

plaintiff's age, with the plaintiff's alleged impairments and symptoms, who had

past experience in a "housekeeping, laundry worker, and kitchen helper job all at

the nursing home" and also a "kitchen worker job, or helper job, at a prison."  (R. at

319.)  Immediately after listing these past jobs, the ALJ expressly stated that "they

were all basically medium type work."  *Id.*  In his second hypothetical, the ALJ

asked the vocational expert to consider the prospects for a woman bound by the

limitations indicated in the non-examining state agency exhibits, and asked "would

this person be able to do any of the prior work that she's done?  If not are there

any other light, we'll say light jobs that such a person can perform?"  *Id.* at 320.

The plaintiff's representative then challenged the ALJ's second hypothetical,

---

[1] In fact, the ALJ made repeated references to the plaintiff's obesity throughout his decision, including her specific weight and height and the effects of her obesity upon her daily routine, physical capabilities, and other alleged impairments.  *See, e.g.*, R. at 22.

5

pointing out that the plaintiff's past work history "was a lot heavier job than light I

think."  (R. at 321.)  The vocational expert did not hear this question, so the ALJ

repeated the point to the vocational expert in the following way:

> Okay.  She [the plaintiff's representative] raised the issue of whether
> the jobs that she [the plaintiff] had done in the past were at the light
> level of exertion and she [the representative] says that [these past
> jobs] were probably heavier than that.  And I think, I think I stated in
> my hypothetical that her testimony indicated that those jobs were
> done at the medium level.  Is that correct or not?

*Id.*  In response, the vocational expert indicated that she understood that the

plaintiff had "testified that they [the plaintiff's past jobs] were at the medium

level[,]" but that the jobs available under the conditions posed in the ALJ's second

hypothetical were "just on the light to medium level."  *Id.* at 322.

The plaintiff now claims that the vocational expert never heard her true past

work history, that the vocational expert never heard her representative's question,

and that the ALJ refused to allow the vocational expert to answer her

representative's question.  (DE 9-2 at 3.)  Without legal citation, she argues that

these alleged errors are sufficient to warrant reversal and remand.  The court need

not consider the legal merits of this argument because it finds that the plaintiff's

descriptive claims about the hearing are inaccurate.  Contrary to the plaintiff's

claims, the vocational expert was told of the plaintiff's past work history; in fact,

the vocational expert expressly affirmed that the plaintiff's past work history

constituted medium-level work.  *See* R. at 322.  Furthermore, while the vocational

expert did not hear the plaintiff's representative's question, the ALJ immediately

6

repeated this question and directed the vocational expert to respond to it.  *See id.*
at 321.

### C.    The ALJ's Alleged Misuse of the Vocational Expert's Testimony

Alluding to the exchanges discussed above, the plaintiff claims that the ALJ
erred by relying "on Vocational Expert testimony identifying alternative work, where
*none* of [the plaintiff's alleged] symptoms were incorporated!"  (DE 9-2 at 4.)
Therefore, the plaintiff suggests that the ALJ's decision was not based "on a full
and accurate assessment of all of Ms. Withers'[s] impairments, including her morbid
obesity."  *Id.* (citing, inter alia, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th
Cir. 2002)).  Essentially, based on *Howard*, the plaintiff attacks both the ALJ's
assessment of the plaintiff's residual functional capacity and the second
hypothetical posed by the ALJ to the vocational expert, arguing that the ALJ's
"denial decision here is not supported by either the relevant Vocational Expert's
Testimony [or] by [substantial] evidence contained in the record."  (DE 9-2 at 6.)

In *Howard*, the Sixth Circuit distinguished an ALJ's assessment of a
plaintiff's residual functional capacity ("RFC") from the hypothetical questions
posed to a vocational expert.  An RFC "is to be an 'assessment of [a plaintiff's]
remaining capacity for work' once her limitations have been taken into account"; it
is intended to be "an assessment of what [a plaintiff] can and cannot do, not what
she does and does not suffer from."  276 F.3d at 239 (quoting 20 C.F.R.
§ 416.945).  On the other hand, "[t]he hypothetical question posed to a [vocational

7

expert] for purposes of determining whether [a plaintiff] can perform other work . . . should be a more complete assessment of her physical and mental state" including "an 'accurate portrayal of her individual physical and mental impairments.'"  *Howard*, 276 F.3d at 239 (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).  The ALJ in *Howard*, like the ALJ in this matter, posed a second hypothetical to a vocational expert that was essentially the same as the ALJ's description of the plaintiff's RFC.  The Sixth Circuit held that this was grounds for reversal and remand because both the RFC and the second hypothetical in *Howard* "failed to describe accurately [the plaintiff's] abilities in several respects" and because the second hypothetical "also fail[ed] to describe accurately [the plaintiff's] physical and mental impairments; a defect which . . . is fatal to the [vocational expert's] testimony and the ALJ's reliance upon it."  276 F.3d at 241.

Following *Howard*, and "[t]aking into account the purpose of the RFC," this court must "first address whether the ALJ's description of [the plaintiff's] RFC accurately reflects her abilities" before analyzing the ALJ's second hypothetical to the vocational expert.  276 F.3d at 239.  If the ALJ's description of the plaintiff's RFC accurately reflects the plaintiff's abilities, "then the ALJ's conclusion, inasmuch as it relies upon the RFC, is supported by substantial evidence."  *Id.* Although the plaintiff's "maladies should inform an assessment of her abilities, this does not mean that the RFC must enumerate them."  *Id.*

8

In his decision, the ALJ found that the plaintiff "has the residual functional capacity to do the following: lift/carry 20 pounds occasionally, 10 pounds frequently; occasionally climb stairs, ramps; no climbing ladders, ropes or scaffolds; occasional kneeling, crouching, crawling." (R. at 21.) This assessment of the plaintiff's RFC also formed the substance of the ALJ's second hypothetical to the vocational expert, without any discussion of the plaintiff's impairments. *See* R. at 320. Accordingly, under *Howard*, unless the assessment of the plaintiff's RFC accurately reflects the plaintiff's abilities, the court must reverse and remand; however, if this assessment does accurately reflect the plaintiff's abilities, then the court should find that the ALJ's conclusion is supported by substantial evidence.

Since the alleged onset of her disability, the plaintiff's treating physician, Dr. Banks, has diagnosed her with chronic and morbid obesity, anxiety symptoms, depression, low back pain, and left hip pain. (R. at 148-50.) Contrary to the plaintiff's claims, however, Dr. Banks did not discuss any limitations on her ability to work before the ALJ's decision.[2] Rather, the only evidence available to the ALJ about the plaintiff's physical limitations came from the plaintiff's own allegations, which the ALJ specifically found were only partially credible, *see* R. at 22, and from the assessments of two state agency medical consultants, *see* R. at 169-77, 231-

---

[2] On March 2, 2006, after the ALJ rendered his decision, Dr. Banks submitted a short letter, included in the record, in which he states that he "do[es] not think [the plaintiff] can be gainfully employed" as a result of her "[m]orbid obesity, osteoarthritis pain, hypertension, and anxiety." (R. at 14.) This letter was included in the record by the Appeals Council.

9

38.  The assessments of the two state agency medical consultants, which are uncontradicted by any other evidence in the record except the plaintiff's own testimony, are, if anything, less restrictive than the ALJ's assessment of the plaintiff's RFC.  *See, e.g.*, R. at 171 (stating that the plaintiff could occasionally climb ladders, ropes, or scaffolds).  Therefore, the court finds that the ALJ in this matter properly based his assessment of the plaintiff's RFC on these opinions from consulting physicians, which were uncontradicted by any evidence from the plaintiff's treating physician at the time of the ALJ's decision,[3] as well as the plaintiff's reported activities.  Because the ALJ's assessment of the plaintiff's RFC, based on this evidence in the record, accurately reflects the plaintiff's abilities and limitations, the court finds that the ALJ's conclusion was supported by substantial evidence.  Accordingly,

   **IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 9) is **DENIED**.

   **IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (DE 11) is **GRANTED**.

---

   [3]  Thus, the court also finds that the plaintiff's reliance on *Howard* is misplaced: unlike the matter at hand, the ALJ in *Howard* ignored the specific work limitations set forth by a treating physician; moreover, in *Howard*, the work limitations alleged by the plaintiff were not contradicted by any other medical reports in the record.  *See* 276 F.3d at 239-40.

Signed on July 3, 2007

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY